OPPS
James M. Baker, Esq.
Nevada Bar No. 9962
CASTRO & BAKER, LLP
6600 Amelia Earhart Ct., Suite C
Las Vegas, NV 89119
Office: (702) 988-2631
Fax: (702) 456-2542
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| **STEPHEN G. DeNIGRIS, ESQ.,** ) | |
| ) | |
| *Plaintiff,* ) | **Civil Action 11-cv-0119 (JCM/RJJ)** |
| ) | |
| v. ) | **PLAINTIFF'S OPPOSITION TO** |
| ) | **DEFENDANT PAGE'S MOTION TO** |
| **LAS VEGAS POLICE MANAGERS AND** ) | **DISMISS** |
| **SUPERVISORS ASSOCIATION, INC.,** ) | |
| **and PAUL PAGE,** ) | |
| ) | |
| *Defendants.* ) | |

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW Plaintiff Stephen G. DeNigris, Esq., through the undersigned counsel, who files this Opposition to defendant Paul Page's Motion to Ddismiss. As further grounds, counsel would state:

## I. DEFENDANT SUBMITTED EVIDENCE OUTSIDE THE SCOPE OF THE PLEADINGS

Defendant Page styled his motion as one arising under FED. R. CIV. P. 12(b)(6). However, as part of that motion, Defendant Page submitted evidence outside of the pleadings for consideration by the Court. FED. R. CIV. P. 12(b)(6) permits the consideration of matters outside the pleadings only if the Motion to Dismiss is converted into a Motion for Summary Judgment. A Motion to Dismiss supported by extraneous materials normally cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating, "preferably by an explicit ruling," that it will not exclude those materials from its consideration. *Swedberg v. Marotzke*, 339 F.3d 1139 (9th Cir. 2003). The Court must then give the parties a reasonable opportunity to present material that would be pertinent under the summary judgment motion.

1    *Parsons v. Sanchez,* 46 F.3d 1143 (9th Cir. 1995); *see also Mack v. South Bay Beer Distributors,*

2    *Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

3          Defendant Page adopts the identical argument raised by Defendant PMSA in its pending

4    Motion for Partial Summary Judgment (Docket Entry #34) concerning the existence of a contract

5    for the 2009-2012 term and the statute of frauds. Thus, Defendant Page converts his Rule 12(b)(6)

6    Motion to Dismiss into a Rule 56 Motion for Summary Judgment, without adequate time for

7    discovery, and without complying with L.R. 56.1 concerning summary judgment motions or action

8    by this Court.

9          Similarly, many of the documents included as exhibits on the contract and statute of frauds

10   issues upon which Defendant Page relies were not attached to the Complaint, or referred to in the

11   Complaint. Thus, the Court should not consider them within the confines of Rule 12(b)(6) and

12   thus deny Defendant Page's Motion to Dismiss altogether. Plaintiff feels compelled to treat the

13   latter part of Defendant Page's motion as one for summary judgment. Plaintiff would not normally

14   presume that the Court will treat defendant's motion as such without direction or instruction from

15   the Court that it will consider those materials submitted by the defendant which are completely

16   outside the pleadings. However, plaintiff feels compelled to respond to Defendant Page's

17   improper motion to assist in the Court's determination. If the Court decides to view this motion

18   as a Rule 56 motion, then plaintiff requests additional time to respond to a motion for summary

19   judgment.

20          **II.  THE MOTION TO DISMISS STANDARD UNDER RULE 12(B)(6)**

21          When considering a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim, the

22   Court must accept as true all factual allegations in the Complaint, as well as all reasonable

23   inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n.2

24   (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving

25   party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). In general, the Court should

26   only look to the contents of the Complaint during its review of a Rule 12(b)(6) Motion to Dismiss.

27

28                                        Page 2 of  28

1    However, the Court may consider documents attached to the complaint, or referred to in the

2    Complaint, whose authenticity no party questions. *Id.; see Durning v. First Boston Corp.*, 815

3    F.2d 1265, 1267 (9th Cir. 1987).

4        The analysis and purpose of a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

5    is to test the legal sufficiency of a Complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

6    2001).  The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is

7    entitled to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249

8    (9th Cir. 1997).  To avoid a Rule 12(b)(6) dismissal, a Complaint does not need detailed factual

9    allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face."

10   *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (*quoting Bell Atlantic*

11   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (stating that

12   a "claim has facial plausibility when the plaintiff pleads factual content that allows the Court to

13   draw the reasonable inference that the defendant is liable for the misconduct alleged").

14       Even though a Complaint does not need "detailed factual allegations" to pass muster under

15   12(b)(6) consideration, the factual allegations "must be enough to raise a right to relief above the

16   speculative level . . . on the assumption that all the allegations in the Complaint are true (even if

17   doubtful in fact)." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or

18   'a formulaic recitation of the elements of a cause of action will not do." I*qbal*, 556 U.S. at ___, 129

19   S.Ct. at 1949. "Nor does a Complaint suffice if it tenders 'naked assertion[s]' devoid of 'further

20   factual enhancements.'" *Id*. (*quoting Twombly*, 550 U.S. at 557).

21       If the Court grants a Motion to Dismiss, it must then decide whether to grant leave to

22   amend.  The court should "freely give" leave to amend when there is no "undue delay, bad faith

23   or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue

24   of allowance of the amendment, [or] futility of amendment." FED. R. CIV. P. 15(a)(2);  *Foman v.*

25   *Davis*, 371 U.S. 178, 182 (1962).   Generally, leave to amend is only denied when it is clear that

26   the deficiencies of the Complaint cannot be cured by amendment.  *See DeSoto v. Yellow Freight*

27

28                                   Page 3 of  28

1   *Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

2   ### III.   PLAINTIFF HAS PLEADED A VALID CLAIM FOR SLANDER PER SE

3   To constitute *slander per se*, the alleged defamation must be oral and must fall into one of

4   four categories: (1) that the plaintiff committed a crime; (2) that the plaintiff has contracted a

5   loathsome disease; (3) that a woman is unchaste; or, (4) the allegation must be one which would

6   tend to injure the plaintiff in his or her trade, business, profession or office.   *Nevada Ind.*

7   *Broadcasting v. Allen*, 99 Nev. 404 (1983), *citing*, *Branda v. Sanford*, 97 Nev. 643 (1981).   A

8   statement is defamatory when it would tend to lower the subject in the estimation of the

9   community, excite derogatory opinions about the subject, and hold the subject up to contempt.

10  *Las Vegas Sun v. Franklin*, 74 Nev. 282, 287 (1958);   *see also Posadas v. City of Reno*, 109 Nev.

11  448 (1993).   Whether or not a statement is capable of defamatory construction is a question of law

12  for the Court.   *Id.*   If the statement is susceptible of different constructions, one of which is

13  defamatory, resolution of the ambiguity is a question of fact for the jury.   *Id.* at 646.   "[W]ords do

14  not exist in isolation." *Branda*, 97 Nev. at 646-47.   Consequently, the words must be reviewed in

15  their entirety and in context to determine whether they are susceptible of defamatory meaning.   *Id*.

16  With a claim for *slander per se*, the plaintiff is entitled to presumed general damages.

17  General damages are those that are awarded for "loss of reputation, shame, mortification and hurt

18  feelings."   General damages are presumed upon proof of the defamation alone because that proof

19  establishes that there was an injury that damaged plaintiff's reputation and "'because of the

20  impossibility of affixing an exact monetary amount for present and future injury to the plaintiff's

21  reputation, wounded feelings and humiliation, loss of business, and any consequential physical

22  illness or pain.   *Id.*

23  Plaintiff's Amended Complaint alleges that Defendant Page made "false and defamatory

24  statements to members of the Police Managers and Supervisors, Inc., Board of Directors."   (Amd.

25  Comp., ¶58)   The Amended Complaint further alleges that the statements were unprivileged and

26  injured the plaintiff's business and reputation.   (Amd. Comp., ¶59)   *See also, Chowdhry v. NLVH*

27

28  Page 4 of  28

1   *Inc.*, 109 Nev. 478 (1993) (slander claim must allege an "unprivileged communication" as part of

2   a *prima facie* case). The Amended Complaint also alleges that based on the false and defamatory

3   statements, Defendant PMSA terminated its contract with the plaintiff, (Amd. Comp., ¶61), and

4   that the termination of the contract was the proximate cause of the plaintiff's injuries. (Amd.

5   Comp., ¶62) Reviewing the Amended Complaint in a light most favorable to the plaintiff

6   warrants a finding that the plaintiff's claim has facial plausibility because the plaintiff pled

7   sufficient factual content that allows the Court to draw the reasonable inference that the defendant

8   is liable for the misconduct alleged. *Iqbal, supra.* Moreover, the Amended Complaint is clear that

9   after a 12-year association with plaintiff, Defendant Page damaged plaintiff's reputation, business

10  and professional acumen during the January 2010, meeting and presumably at the subsequent

11  February 28, 2010, meeting wherein Defendant Page made additional statements. Thus, plaintiff

12  alleged sufficient facts to establish a claim for *slander per se* under Nevada law.

13  **IV.  DEFENDANT PAGE'S CLAIM OF CONDITIONAL PRIVILEGE IS PREMATURE**

14          Defendant Page argues that he is entitled to a conditional privilege at the Motion to Dismiss

15  stage because, as he claims, he was acting in "good faith." (Def's Mtn. Dismiss, p.8, line 23)

16  However, at the Motion to Dismiss stage, assertion of a conditional privilege is premature and is

17  more appropriately set forth as an affirmative defense and not as a challenge to the *prima facie*

18  case. Accordingly, Defendant Page's claim of conditional privilege should be rejected.

19          In *Jones v. Golden Spike Corp.*, 97 Nev. 623 (1981), the Nevada Supreme Court adopted

20  the rule that agents and employees of a corporate defendant in a libel action are not third persons

21  for purposes of publication of a libel. In adopting that rule, the Court rejected the position of the

22  RESTATEMENT (SECOND) OF TORTS §577(1) that publication of defamatory material to anyone

23  other than the person defamed, even to agents, is publication for the purposes of making a *prima*

24  *facie* case of defamation. *Id*. at 26. The Court also rejected the RESTATEMENT's position which

25  further recognized that there are privileges for certain intracorporate communications, but such

26  privileges are defenses and not part of the *prima facie* case. RESTATEMENT (SECOND) OF TORTS,

27

28                                      Page 5 of  28

1    §§593-96 (1977).

2         Seventeen years later, *Jones* was overruled by the Nevada Supreme Court in *Simpson v.*

3    *Mars, Inc., et. al.*, 113 Nev. 188 (1997).   In that case, the Court adopted Section 577 of the

4    RESTATEMENT (SECOND) as it applies to a cause of action concerning intracorporate

5    communications.

6         In *Simpson*, the plaintiff alleged she was defamed by corporate officials, agents and

7    employees when the defendant published statements reflecting that Ms. Simpson had sexually

8    harassed co-workers and that she was dismissed for sexual harassment.   The defendants moved to

9    dismiss that claim in addition to other claims asserted by Ms. Simpson arguing that Simpson had

10   not alleged the essential element of publication because the alleged defamatory statements were

11   made to agents and employees of the defendant corporations, who they alleged were not third

12   persons for defamation purposes.   The state District Court agreed and, based on the *Jones* decision,

13   dismissed all claims.

14        On appeal, the Nevada Supreme Court affirmed the dismissal of the plaintiff's

15   employment related claims, but *reversed* the District Court on Ms. Simpson's defamation cause

16   of action.   In overturning *Jones,* the Court specifically adopted §577 of the RESTATEMENT

17   (SECOND) OF TORT and wrote:

18        The instant case exemplifies why the RESTATEMENT provides a better rule when dealing
          with corporations.  The circumstances of the communication of the allegedly defamatory
19        material are uniquely within the knowledge of the corporation and its agents.   It is unfair
          to put the burden on the plaintiff to determine and allege the circumstances of
20        communication within the corporation before she can make a *prima facie* case.
          Therefore, the circumstances of communication are more appropriately an element of the
21        defense to an action of defamation, rather than an element of the plaintiff's *prima facie*
          case.   See also W. Page Keeton, et al., *Prosser and Keeton on Torts*, (5th ed. 1984), §
22        113, 797-802.

23        Another practical problem with the approach this court took in Jones is that the law of
          defamation is meant to provide an incentive for people not to spread lies that can injure
24        others.   Since most people spend a good part of their time, effort and lives at their work,
          and have many colleagues, friends and acquaintances there, to allow an employer to
25        circulate lies around the workplace with impunity is particularly damaging.

26

27

28                                          Page 6 of  28

Lastly the Court held:

> This Court adopts the position of the RESTATEMENT (SECOND) OF TORTS § 577(1), and overrules the position taken by this Court on the issue of publication of defamatory communications within corporations in *Jones v. Golden Spike Corp.*, 97 Nev. 24, 27, 623 P.2d 970, 971 (1981).  Corporations may have the defense of privilege to allegations of defamation, but the burden of alleging and proving the privilege are on the defendant corporation, not the plaintiff.  *Id.*

In the instant case, the plaintiff has stated a cause of action for *slander per se*.  And while the defendant asserts that "during deposition" there was no evidence elicited from Page concerning the alleged defamatory statements, the defendant fails to apprise the Court that the plaintiff's motion to amend the complaint and add Page as a defendant was not granted until January 10, 2012, (Docket Entry #33) which was almost one-month after the deposition of Page in December 2011.  Thus, any discovery on the issue of the defamatory statements would have not been appropriate and would properly warrant a motion for a protective order until such time as the Court granted the plaintiff's motion to amend.  Consequently, defendant's argument about what the deposition may or may not have demonstrated is of little significance or relevance to the motion at bar.

In the same vein, the defendant's claim of conditional privilege is not an *absolute privilege*.  As with any qualified privilege, a conditional privilege is subject to a rebuttable presumption, because it raises a factual issue of whether the statements were made in good-faith and in the absence of malice.  The issue of good-faith is one which can only be resolved by the trier of fact.  *See e.g. Allstate Insurance Co. v. Miller,* 212 P.3d 318 (Nev. 2009) (insurer's good-faith is a question of fact); *Williams v. Williams*, 120 Nev. 559 (2004) (annulment proceeding - question of good faith is factual question);  *Hilton Hotels Corp. v. Butch Lewis Productions, Inc.*, 107 Nev. 226 (1991)(good-faith dealing with contract question of fact);  *K Mart Corp. v. Ponsock*, 103 Nev. 39 (1987) (question of good faith is a question of fact that must be decided by the fact finder).

Similarly, a claim of a conditional privilege can be overcome under Nevada law if the plaintiff can demonstrate that the privilege was abused.  A conditional privilege may be abused by publication in bad faith, with spite or ill will or some other wrongful motivation toward the

plaintiff, and without belief in the statement's probable truth. *See Gallues v. Harrah's Club*, 87 Nev. 624, 627 (1971).  In other words, if the plaintiff can demonstrate that Defendant Page's statements were made with actual malice, with knowledge they were false, or with reckless disregard for whether the statements were false, the privilege fails and liability attaches even to intra-corporate disclosures.  *See Bank of America Nevada v. Bourdeau*, 115 Nev. 263 (1999).

In the case at bar, the plaintiff should be afforded the opportunity to develop this claim against Defendant Page through discovery and seek evidence which would demonstrate that Defendant Page abused the privilege; made the statements with actual malice, or with knowledge that the statements were false; or with reckless disregard for the truth.  Thus, the defendant's assertion of conditional privilege at the motion to dismiss stage should be rejected to allow the plaintiff to develop the claim further.  *See e.g. Fink v. Oshins*, 118 Nev. 428, fn23 (2002) (case remanded to allow development of evidence to determine whether defendant abused conditional privilege); *see also Circus Circus Hotels v. Witherspoon,* 99 Nev. 56 (1983) (plaintiff to prove to the jury's satisfaction that defendant abused the privilege by publishing the communication with malice in fact); *see also Aspell v. Amer. Contract Bridge League*, 595 P.2d 191 (Ariz.App. 1979) (question goes to the jury only if there is sufficient evidence for the jury to reasonably infer that the publication was made with malice in fact).  Accordingly, for the foregoing reasons, Defendant Page's motion should be denied.

### V.   PLAINTIFF HAS PLEADED A VALID CLAIM FOR TORTIOUS INTERFERENCE WITH A CONTRACT

Defendant Page's next argument clearly demonstrates that he is seeking summary judgment on the issue of the existence of a contract, rather than addressing the matter within the confines of a Rule 12(b)(6) Motion to Dismiss.  In this regard, the defendant submits testimony obtained during discovery with the corporate Defendant PMSA as evidence that no contract existed between the parties.  Defendant Page then asserts the statute of frauds as an affirmative defense, as did Defendant PMSA.  Defendant Page's argument does not comply with L.R. 56.1.  That rule

instructs the reader that:

> Motion for summary judgment and responses thereto shall include a concise statement setting forth each fact material to the disposition of the motion which the party claims is or is not genuinely in issue, citing the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence upon which the party relies.

The defendant failed to comply with that portion of the local rules and on that ground, the defendant's motion should be denied. And while the Court has not rendered an opinion as to whether it would consider material outside the pleadings on this issue, the plaintiff addresses this portion of his opposition under both procedural rules and submits a concise statement of material facts in dispute, which demonstrates that neither dismissal nor summary judgment is appropriate.

In a Motion to Dismiss under Rule 12(b)(6), to establish tortious / intentional interference with contractual relations, the plaintiff must show: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damages. The plaintiff has pleaded sufficient facts to establish a *prima facie* case.

On this issue, plaintiff's Amended Complaint alleges that from January 1, 2009, through December 31, 2012, there existed a valid and existing contract between the plaintiff and the defendant organization, PMSA. (Amd. Comp., ¶65) The second element pleaded was that Defendant Page had knowledge of the contract. (Amd. Comp., ¶66)

The third element pleaded was that Defendant Page conspired with others presently unknown to *maliciously* breach the contract with the plaintiff by falsely reporting that the plaintiff had not been performing his required work; that the plaintiff refused or failed to send out letters as required; that the plaintiff failed to draft letters as required; that other legal services were necessary to complete a real estate transaction because of the plaintiff's failure to complete work; that members of the organization would not utilize the plaintiff's services once they learned that he would represent them; and that Defendant Page had to manage the plaintiff's work. (Amd. Comp., ¶67)

1    The fourth element pleaded is that the intentional acts of Defendant Page, and others
2  presently unknown, were intended and designed to disrupt the contractual relationship between the
3  plaintiff and Defendant PMSA, which had lasted approximately twelve years. (Amd. Comp., ¶68)

4    The fifth element pleaded alleged that as a result of these malicious and false statements,
5  Defendant PMSA terminated its contractual relationship with the plaintiff on February 28, 2010,
6  disrupting the plaintiff's contractual relationship with the defendant by terminating the contract
7  approximately two (2) years and ten (10) months early, resulting in a loss of earnings for that
8  remaining period of time. (Amd. Comp., ¶69).

9    Lastly, the plaintiff alleged that Defendant Page and others were the sole and proximate cause
10  of the plaintiff's damages and that damages in the amount of $217,000.00 resulted from Defendant
11  Page's actions.   In each and every paragraph, plaintiff has set forth sufficient facts to state a claim
12  to relief that is plausible on its face.

13    As it applies to Defendant Page's potential Rule 56 Motion for Summary Judgment, plaintiff
14  responds as follows:

15    A.    _Concise Statement of Material Facts in Dispute_.

16    Defendant Page claims that his Motion to Dismiss and/or Partial Summary Judgment is
17  appropriate on plaintiff's Amended Complaint because no contract existed, or that the contract
18  came within the purview of the Statute of Frauds and is, therefore, unenforceable.  In support of
19  that premise, defendant claims that plaintiff admitted no written contract existed between the
20  parties for the 2009-2012 term. That is misleading and disputed. Plaintiff pointed to several
21  documents that collectively constituted the written contract. [See Exh. A - Page Depo. p. 22, line
22  11 through p. 24, line 2; See Exh. B (the 2006-2008 Contract); See Exh. C - DeNigris Dep., p. 29,
23  line 3 - p.30, line 22; See Exh. D - Nov. 2008 PMSA Board Minute Meetings; See Exh. L -
24  DeNigris Ltr 11-17-2008]  All material terms were agreed upon and based upon the terms of the
25  2006-2008 written contract, the validity of which is not in dispute. _Id_.

26
27
28

1       Defendant Page claims the PMSA Board minutes clearly reflect that the Board insisted that

2   a 60-day termination clause be placed in any new contract prior to the contract being signed.  That

3   is also false. The minutes of the board meeting do not support the defendant's assertion that the

4   60-day opt out, allegedly proposed by Page, was ever voted on, or adopted, by the PMSA Board.

5   [See Exh. D - Nov. 2008 PMSA Board Minute Meetings; See Exh. A - Page Depo. p. 29, lines 13-

6   23; p. 34, line 1 through p. 35, line 20]

7       Defendant claims that the Statute of Frauds makes any agreement between the parties void

8   because it was not in writing.  That is a conclusion of law rather than a statement of fact.  Plaintiff

9   disputes the factual basis of this legal conclusion for a variety of reasons, including exceptions to

10  the statute and estoppel.  In the instant case, the identity of both parties to the agreement is clearly

11  established. [See Exh. B (the 2006-2008 Contract); See Exh. L - DeNigris Ltr 11-17-2008]  The

12  subject matter of the agreement was clearly identified as it pertained to the continuation of chief

13  legal counsel services to Defendant PMSA. *Id.*  Thus, the essential terms and conditions of the

14  agreement were clearly established by the evidence of record and by whom the promises were

15  made. [See Exh. B (the 2006-2008 Contract); See Exh. D - Nov. 2008 PMSA Board Minute

16  Meetings;  See Exh. G, DeNigris Ltr 1-28-2009;  See Exh. L - DeNigris Ltr 11-17-2008]

17  Accordingly, a contract existed for the 2009-2012 term that was not void due to the Statute of

18  Frauds.

19      B.      *Controverting Statement of Facts.*

20      Plaintiff initiated this action against Defendant PMSA to compel arbitration under the terms

21  of a contract for employment which was in effect from January 1, 2009, through December 31,

22  2012.  Plaintiff seeks damages in excess of $227,000.00, from the defendant as compensation for

23  the illegal termination of the contract by the PMSA.  The plaintiff enjoyed an employment

24  relationship with the PMSA since approximately 1998. [See Exh. A - Page Depo. p. 12, line 18

25  through p.13, line 7]  The original contracts were limited in scope in that they provided for legal

26  defense in administrative disciplinary matters for the PMSA arising out of its representation of

27

28                                      Page 11 of  28

1  Metro Police sergeants, lieutenants, and captains, as well as overall labor relations strategy. After

2  2006, plaintiff took on additional responsibilities as the defendant's chief legal counsel, which

3  included oversight and management of local counsel, administrative representations, and labor

4  related matters. *Id.*

5      In 2006, the parties entered into a successor written agreement for services for the period of

6  2006-2008. [See Exh. B - the 2006-2008 Contract] Defendant Page had been the chairman of the

7  PMSA since 2004 and was fully authorized to enter into and sign contracts for the PMSA. As it

8  applied to the 2006-2008 contract for representation between the parties, Defendant Page and the

9  plaintiff spoke at length. During the discussions of the 2006-2008 contract, Defendant Page

10  expressed significant interest in maintaining an alternative dispute resolution procedure, not so

11  much for his part, but to insure that plaintiff would have continued employment with the PMSA

12  should he (Page) not continue to be chairman in the future. [See Exh. C - DeNigris Depo., p.41,

13  lines 10 - 24] Consequently, Section 9 of the contract was included with an alternative dispute

14  resolution provision. This provision provides:

15      If any dispute or controversy between the parties arises out of or relates to this
       agreement, the breach thereof, or any performance or obligation hereunder, and if the
16     dispute cannot be settled through direct negotiation, the parties first to try in good
       faith to settle the dispute by mediation. The parties shall mutually agree on a
17     qualified, experienced mediator located in Clark County, Nevada. Any controversy
       or claim arising out of or relating to this agreement, the breach thereof of the parties'
18     rights and obligations arising hereunder, not settled at mediation, shall be resolved
       and determined by binding arbitration administered by the American Arbitration
19     Association under its Commercial Arbitration Rules. The administrative costs of the
       AAA will be borne equally by the parties and each party will bear its own costs and
20     expenses associated with any such arbitration. Venue for any arbitration proceeding
       arising out of or relating to this agreement, will exclusively lie in Clark County,
21     Nevada.

22      [See Exh. A - Page Depo. p. 17, line 9 through p. 19, line 14; See Exh. B - the 2006-
       2008 Contract)]
23

24      Plaintiff dealt almost exclusively with Defendant Page concerning his working relationship

25  with Defendant PMSA. [See Exh. C - DeNigris Dep. p.41-43; 44-46; 67-68] Virtually no other

26  board member  or employee for Defendant PMSA ever dealt with the plaintiff concerning

27  contractual, administrative, or labor matters from the time Defendant Page became Chairman of

28                              Page 12 of  28

the PMSA. *Id.* This relationship included discussions on contracts with Defendant PMSA, as well as discussions on Defendant Page's personal business dealings.

The PMSA Fall 2008 election saw Defendant Page elected to a new four-year term of office. After the election, Defendant Page approached and hugged the plaintiff over his election to a four-year term. Defendant Page then stated to the plaintiff; "you are my guy and I want you with me for as long as I am chairman." [See Exh. C - DeNigris Depo, p.30, lines 7 - 12]   Accordingly, when the issue of plaintiff's contract renewal arose in November 2008 for the next term, it was Defendant Page who told plaintiff to prepare a renewal proposal for the November 19, 2008, board meeting with a four-year term, plus a 4% increase each year. [See Exh. A - Page Depo. p. 22, line 11 through p. 25, line 2; See Exh. C - DeNigris Depo. p. 29, lines 13 -20]  Thus, Defendant Page was the individual who proposed both the length of the contract and the rate of remuneration.  The plaintiff accepted this proposal and prepared his letter to Defendants Page and PMSA.. [See Exh. C -DeNigris Depo., p. 28, line 21 - p. 30, line 22; See Exh. L - DeNigris Ltr 11-17-2008]) [1]

Contrary to the assertion by Defendant Page, and as evidenced by the plaintiff's letter, there was never a proposal or discussion between Defendant Page and the plaintiff about a 60-day out clause.[2]   In fact, Defendant Page was so satisfied with the plaintiff's work that he wanted the plaintiff employed for an expanded term as legal counsel. [See Exh. A - Page Depo. p. 34, lines

---

[1]

The plaintiff and Mr. Page also had numerous conversations that he (Page) planned on retiring from Metro Police as Chairman of the PMSA and that he wanted the plaintiff as his counsel.  These conversations factored into the plaintiff's letter to the defendant on November 17, 2008, concerning the 4-year term of employment with the 4% rate increase.

[2]

During deposition, Mr. Page testified to the following as it applied to the alleged 60-day out clause and his discussions with the plaintiff:

Q:      Was it -- was it specifically discussed?
A.      I don't remember.  I don't recall.

[See Exh. A. - Page Depo. p. 25, lines 19-20]

1-5]  Defendant  Page also conceded that he never created any document which referenced a 60-day out clause. [See Exh. A - Page Depo. p. 42, lines 18-20]  Plaintiff attended the November 19, 2008, board meeting of Defendant PMSA.  The board had the plaintiff's November 17, 2008, letter.  When the contract renewal topic came up, plaintiff was asked to leave the room.  The minutes of the meeting clearly reflect that Vice-Chairman Jim Dillon made the motion to accept the plaintiff's proposal. [See Exh. D - Nov. 2008 PMSA Board Minute Meetings].  The PMSA Board did not amend, alter or change the plaintiff's proposal in any manner.  In the same vein, the minutes of the board meeting do not support the defendant's assertion that the 60-day opt out, allegedly proposed by Page, was ever voted on, or adopted, by the board for Defendant PMSA. *Id.;* [See Exh. A - Page Depo. p. 29, lines 13-23; p. 34, line 7 through p. 35, line 20; See Exh. D - Nov. 2008 PMSA Board Minute Meetings] [3]

Five minutes later, Defendant Page told the plaintiff that the 4-year term and rate increase had been approved. [See Exh. A - Page Deposition, p. 121, line 18 through p.122, line 1]

---

[3]

> Q:   Correct.  But it doesn't specifically discuss that your proposal to include a 60-day out clause was included, does it?
>
> A:   I mean, I guess technically, yes, but that's the whole -- I mean, that's the right reason why it's there is that we were looking for a 60-day out clause.
>
> Q:   Well, I don't mean to quibble with you, but what it technically says is that you made a proposal for one; correct?
>
> A:   That's correct.
>
> Q:   All right.  And then it says that there was a motion to extend the contract for four years; correct?
>
> Q:   and that's -- and that was voted upon?
> A:   That's correct.
>
> Q:   Okay.  It really says nothing more about your proposal for a -- for a 60-day out clause other than the fact that you made a proposal; correct?
>
> A:   That is correct.

1    Defendant Page and Vice-Chairman Jim Dillon both hugged plaintiff. Other board members shook

2    the plaintiff's hand. [Exh C.- DeNigris Depo,. pp. 52-53]  There was no discussion about a 60-day

3    out clause, or any discussion concerning the preparation of a "new" document reflecting the

4    agreement that was ever relayed to the plaintiff. [See Exh. C - DeNigris Depo. p.52, line 16 - p.

5    53, line 24]

6         Defendant Page's testimony concerning the 60-day out clause is highly suspect when he

7    stated that he "did not remember specifically saying the 60-day out clause, but I know the 60-day

8    out was discussed." [See Exh. A - Page Depo. p. 31, line 22 through p. 32, line 5]  However, the

9    minutes of the board meeting confirm that the plaintiff's proposal was not altered or amended in

10   any way to include a 60-day out clause. [See Exh. D - Nov. 2008 PMSA Board Minute Meetings;

11   See Exh. E - Plaintiff's Answers to Defendant PMSA's Request for Admissions, No. 10]

12        After the board meeting, plaintiff explained to Defendant Page that the 2006-2008 agreement

13   could be "rolled over" under the same terms.  Plaintiff gave Defendant Page the memorandum

14   confirming the terms of the agreement a short time later with a number of other documents. [See

15   Exh. A - Page Depo. p. 39, line 20 through p. 40, line 14 ; See Exh. C - DeNigris Depo. p. 64, line

16   11 - p. 65, line 15]   Defendant Page testified that he had no reason to believe that he did not

17   receive the memorandum from the plaintiff. [See Exh. A - Page Depo. p. 39, line 20 through p. 40,

18   line 14 ; p. 52, line 6 through p. 53, line 25]  He further stated that there was nothing in the letter

19   that he disagreed with except for the fact that there was no mention or discussion of a 60-day out

20   clause in the memorandum.  Defendant Page agreed with plaintiff's proposal to simply "rollover"

21   the terms of the 2006-2008 agreement, with the additional compensation provisions, because that

22   was the only thing that changed.  Id.  Plaintiff and Defendant Page went out that evening to dinner

23   to celebrate the renewal .[4]

24

25   [4]

26        The plausibility of the 60-day out clause is at best dubious after a ten-year work history and

27   the relationship then existing between the plaintiff and the defendant.  The defendant's assertion

     is equally suspect given the fact that the plaintiff had recently resolved a federal trademark

28                                          Page 15 of  28

On January 28, 2009, plaintiff again wrote Defendant Page concerning the terms of the agreement. [See Exh. G - DeNigris Ltr 1-28-2009]   As revealed in that letter, there was no reference to a 60-day out clause, because it simply never existed, was never discussed, and was never requested. Defendant Page acknowledged that he never sent any written communication to the plaintiff complaining about the absence of a 60-day out clause. [See Exh. A - Page Depo. p. 53, line 7 through p. 54, line 1].  The plaintiff performed services under the contract and the defendant paid the plaintiff through all of 2009 (four quarters) and for the first quarter of 2010. [See Exh. J - DeNigris Aff. ¶ 13; See Exh. K, #000022 - 000028] Neither Defendant Page, nor any other representative of Defendant PMSA, ever requested a copy of a new contract from the plaintiff, or made mention of a 60-day out clause.

On March 1, 2010, Plaintiff was contacted by Page, James Dillion, and Noah Grimm by telephone.  In that conversation, Defendant Page stated the board of directors had voted on February 28,2010, to terminate the remainder of Plaintiff's four (4) year contract. The purported reason, as stated by Defendant Page, was a "decline in service."  There was no mention that attorney Santacroce had advised the Defendant PMSA board that no contract between the parties existed, or that the Defendant PMSA board intended to hire attorney Santacroce immediately after terminating the plaintiff's services.

On March 2, 2010, Plaintiff wrote Defendant Page, as well as board members Dillion, Grimm, Teel, Lowe, Hughes, Suey, Faulis, and others seeking to discuss the Board's vote and mediate any dispute, as required by Section 9 the parties' contract. [See Exh. H - DeNigris Email

---

infringement lawsuit against Page's company along with the fact that the plaintiff had been instrumental in having Defendant Page elected to a 4-year term of office.  This dispute of material fact concerning the 60-day out clause in and of itself is sufficient to preclude summary judgment.

Defendant Page's testimony concerning the application of the  60-day out clause also demonstrates the implausibility of its existence.  In this regard, Defendant Page testified that the defendant could sign a four-year contract with the plaintiff and simply terminate it with or without good cause upon 60-days notice. [See Exh. A -. Page Depo., p. 25, line 22 through p. 26, line 8]

1   to PMSA Board Members, 3-01-2010]  On March 4, 2010, plaintiff received a letter from attorney

2   Santacroce indicating that Defendant PMSA, through its Board of Directors, no longer wished to

3   utilize the Plaintiff's services. [See Exh. I - Santacroce Ltr 3-04-2010]  Since March 1, 2010,

4   Defendants have never responded to plaintiff's request to mediate or arbitrate the instant dispute,

5   as required by Section 9 of the parties' contract. This action followed.

## VI.  SUMMARY JUDGMENT UNDER RULE 56

7   Summary judgment may be granted if the pleadings, depositions, answers to interrogatories,

8   and admissions on file, together with affidavits, if any, show that there is no genuine issue as to

9   any material fact and that the moving party is entitled to a judgment as a matter of law.  See FED.

10  R. CIV. P. 56(c)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party

11  bears the burden of informing the court of the basis for its motion, along with evidence showing

12  the absence of any genuine issue of material fact.  Id. at 323.

13  On those issues for which it bears the burden of proof, the moving party must make a

14  showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than

15  for the moving party." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986);  see also

16  Idema v. Dreamworks, Inc., 162 F.Supp.2d 1129, 1141 (C.D.Cal. 2001).  For those issues where

17  the moving party will not have the burden of proof at trial, the movant must point out to the Court

18  "that there is an absence of evidence to support the nonmoving party's case." Catrett, 477 U.S. at

19  325.

20  In order to successfully rebut a motion for summary judgment, the non-moving party must

21  point to facts supported by the record which demonstrate a genuine issue of material fact.  Reese

22  v. Jefferson School Dist. No. 14J, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that

23  might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc.,

24  477 U.S. 242, 248 (1986).  Where reasonable minds could differ on the material facts at issue,

25  summary judgment is not appropriate.  See v. Durang, 711 F.2d 141, 143 (9th Cir. 1983).  A

26  dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable

27

28

1    jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.  The mere

2    existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to

3    establish a genuine dispute; there must be evidence on which the jury could reasonably find for the

4    plaintiff. *Id*. at 252.  The court need only resolve factual issues of controversy in favor of the non-

5    moving party where the facts specifically averred by that party contradict facts specifically averred

6    by the movant. *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 888 (1990);  *see also Anheuser-*

7    *Busch, Inc. v. Natural Beverage Distribs*., 69 F.3d 337, 345 (9th Cir. 1995)  (stating that

8    conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat

9    summary judgment).   "[U]ncorroborated and self-serving testimony," without more, will not

10   create a "genuine issue" of material fact precluding summary judgment.  *Villiarimo v. Aloha*

11   *Island Air Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).  Accordingly,  summary judgment shall not

12   be granted if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S.

13   at 248.

14        Lastly, at the summary judgment stage, the Court is not to weigh the evidence and determine

15   the truth, but rather to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at

16   249.  The evidence of the non-movant must be believed,  and all justifiable inferences drawn in

17   his favor. *Id*. at 255.  If the evidence of the nonmoving party is simply colorable or is not

18   significantly probative, summary judgment may be granted. *See id*. at 249-50.

19        A.    *A Contract Existed Between the Parties*

20        Contrary to the defendant's assertions, there are genuine issues of material fact as to whether

21   a contract existed between the plaintiff and defendant.  Thus, on that basis alone, summary

22   judgment is not appropriate. [See Exh. A - Page Depo. p. 22, line 11 through p. 25, line 2;  See

23   Exh. B - the 2006-2008 Contract;  See Exh. C - DeNigris Dep. p. 29, line 3 - p. 32, line 2; See Exh.

24   D - Nov. 2008 PMSA Board Minute Meetings;  See Exh. L - DeNigris Ltr 11-17-2008]    Under

25   Nevada law, for a contract to be enforceable there must be "an offer and acceptance, a meeting of

26   the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).  Whether an

27

28                                         Page 18 of  28

1    enforceable contract exists is a question of fact. *Id. at* 1257.   Preliminary negotiations can

2    constitute a binding contract when the parties have agreed to all material terms and when material

3    terms are certain and definite. *Id.*   When the parties have agreed to the material terms, the court

4    will find a contract even though the contract's exact language is not finalized until later. *Id.*   "In

5    determining whether a contract or its terms are definite, an important consideration is whether the

6    court can determine [the putative contract's] exact meaning and fix the legal liability of the

7    parties." *Chung v. Atwell*, 745 P.2d 370, 371 (Nev. 1987).

8        Moreover, nothing in the law of contracts requires that a contract, whether original or

9    modified, must be signed to be enforceable.  The contract needn't be in writing; if it is in writing,

10   it needn't be signed, provided there's other evidence of acceptance, for example (a very pertinent

11   example) by performance.  *See e.g. , In re Vic Supply Co., Inc.*, 227 F.3d 928, 932 (7th Cir. 2000).

12   The Ninth Circuit has stated that the course of performance of the parties is also highly probative

13   of the parties understanding of the agreement. *Nanakuli Paving & Rock Co. v. Shell Oil Co., Inc.*,

14   664 F.2d 772, 785 (1981)

15       In the case at bar, the evidence clearly demonstrates that the proposal to renew the existing

16   2006-2008 contract was an offer.  Whether Defendant Page is viewed as the offeror or the plaintiff

17   is viewed as the offeror, the parties demonstrated their intent to continue their contractual

18   relationship; to enter into a rollover agreement for the years 2009-2012; and to the definite terms

19   setting forth the form of duration of the agreement and remuneration.  All material terms were

20   agreed upon and based upon the terms of the 2006-2008 contract, a contract the validity of which

21   is not in dispute. [See Exh. A - Page Depo. p. 22, line 11 through p. 25, line 2; See Exh. C -

22   DeNigris Dep. p. 29, line 3 - p. 32, line 2; See Exh. D - Nov. 2008 PMSA Board Minute Meetings]

23       Even if the Court determines that the parties' discussions were preliminary negotiations,

24   preliminary negotiations can constitute a binding contract when the parties have agreed to all

25   material terms and when material terms are certain and definite. *Matter of the Estate of Kern*, 107

26   Nev. 988, 991, 823 P.2d 275, 277 (1991);  *Richards v. Oliver*, 328 P.2d 544, 552 (Cal. Dist. Ct.

27

28                                    Page 19 of  28

1   App. 1958).  The 2006-2008 contract set forth all the terms of the agreement for the 2009-2012

2   rollover renewal. [See Exh. B - the 2006-2008 Contract]

3       First, the November 17, 2008, memorandum identified the terms of the agreement. [See Exh.

4   L - DeNigris Ltr 11-17-2008] The November 19, 2008, minutes of the board meeting of Defendant

5   PMSA confirmed the terms of the agreement. [See Exh. D - Nov. 2008 PMSA Board Minute

6   Meetings]    The November 19, 2008, memorandum provided by the plaintiff to the defendants

7   confirmed the agreement. [See Exh. A - Page Depo., p. 40, lines 1-13;  See Exh. C - DeNigris

8   Depo. p. 64, line 4 - p. 65, line 15] The January 28, 2009, letter further confirmed the terms of the

9   agreement. [See Exh. G - DeNigris Ltr 1-28-2009]  The payments commencing in 2009 for the

10  amounts specified in the January 28, 2009, letter and signed by Defendant Page, confirmed the

11  terms of the agreement. [See Exh. K, #000022 - 000028] The plaintiff's performance from January

12  2009 through March 1, 2010, further evidenced the terms of the agreement. [See Exh. J - DeNigris

13  Affidavit, ¶ 13]  It was only because the defendant's breach of the contract that the plaintiff could

14  not render full performance.

15      And while the defendant claims no contract existed because the agreement did not contain

16  a 60-day out clause and a separate new agreement was not executed, whether that was a

17  requirement to the validity or existence of a contract is a material fact in dispute which also

18  precludes summary judgment.  The contract was reasonably certain as to its subject matter, its

19  stipulations, its purposes, its parties and the circumstances under which it was made.  Thus,

20  summary judgment should be denied.

21      B.  *The  Rollover Clause Was a Legitimate  Method to Extend*
            *the Terms of the 2006-2008 Contract Which the Parties Agreed Upon*

22

23      A rollover - or evergreen clause - automatically renews a contract, after the anniversary

24  date without any additional agreement or signature being required.  The intention of a rollover

25  contract, retaining a customer's business, hopefully for an indefinite period of time, is not illegal

26  or unethical.  As a threshold matter, rollover/evergreen clauses are legally valid. *See, e.g., Eastern*

27  *Enterprises v. Apfel*, 524 U.S. 498  (1998) (discussing evergreen clause as legitimate contractual

28                          Page 20 of  28

provision); *International Union of Operating Engineers, Local 369 v. Office & Professional Employees Union, Local 367*, 66 F.3d 325 (6th Cir. 1995) (describing valid evergreen clause in collective bargaining agreement); *Barrick Gold Exploration, Inc. v. Hudson*, 823 F. Supp. 1395, 1405 (S.D. Ohio 1993) (discussing valid evergreen clause in a trust agreement).

When a contract is renewed via the operation of an evergreen clause, all of the attendant contractual obligations naturally continue for the period of renewal. *See also Trustees of Sheet Metal Local No. 10 v. Genz-Ryan Plumbing and Heating Co.*, Civ. No. 08-4752 (D. Mn. Jul. 17, 2009) (employers are bound by the terms of a so-called "evergreen" clause in collective bargaining agreements (CBA) under fundamental contract law principles.)

In this case, the parties agreed to rollover the terms of the 2006-2008 contract. [See Exh. A - Page Depo. p. 40, lines 1-13; See Exh. C - DeNigris Depo. p.. 64, line 4 - p. 65, line 15]  And despite the defendants' claim that provisions were redacted from the 2006-2008 contract, the defendants *do not dispute* the validity of the 2006-2008 contract.  The 2006-2008 contract contained definite terms, demonstrated that the parties intended to be bound by the agreement, and the parties performed under the agreement.  Defendant Page acknowledged in his testimony that he fully understood what a roll over provision was. [See Exh. A - Page Depo. p. 40, line 15-17]  Thus, summary judgment is not appropriate.

C.   *The Statute of Frauds Does Not Bar Enforcement of the 2009-2012 Contract*

The defendant seeks to avoid enforcement of the 2009-2012 contract by asserting the Statute of Frauds as a defense.  NRS 111.220 provides:

Agreements not in writing: When void. In the following cases every agreement is void, unless the agreement, or some note or memorandum thereof expressing the consideration, is in writing, and subscribed by the person charged therewith:

1.   Every agreement that, by the terms, is not to be performed within one year from the making thereof.

2.   Every special promise to answer for the debt, default or miscarriage of another.

3.   Every promise or undertaking made upon consideration of marriage, except mutual promises to marry.

4. Every promise or commitment to loan money or to grant or extend credit in an original principal amount of at least $100,000 made by a person engaged in the business of lending money or extending credit.

5. Every promise or commitment to pay a fee for obtaining a loan of money or an extension of credit for another person if the fee is $1,000 or more.

Defendant Page claims that any alleged contract cannot be enforced because: (i) the 2009-2012 agreement was not in writing;  (ii) the 2009-2012 agreement was not signed by Defendant Page; and (iii) by its terms the 2009-2012 agreement could not be performed within one-year from the making thereof.  Thus, the defendant asserts, the Statute of Frauds bars the enforcement of the putative agreement.  The defendant, however, conveniently ignores the numerous exceptions to the statute recognized by the Nevada courts.

The Statute of Frauds is intended for the protection of the respective parties to a parol agreement.  Whenever one party, confiding in the integrity and good faith of another, proceeds so far in the execution of a parol contract that he can have no adequate remedy unless the whole contract is specifically enforced, then equity requires such relief to be granted; because, if the rules were otherwise the statute, which is designed to prevent fraud, would itself become an instrument of fraud.  *Schreiber v. Schreiber*, 99 Nev. 453, 663 P.2d 1189 (Nev. 1983).

As it applies to the arguments advanced by the defendant, the statute does not require a contract to be in a single document.  A contract may be pieced together out of separate writings connected with one another.  Signed and unsigned writings may be read together, provided that they clearly refer to the same subject matter or transaction. *Crabtree v. Elizabeth Arden Sales Corp.* 305 N.Y. 48, 110 N.E.2d 551 (1953).

Oral testimony may also be admitted to show the connection between the documents and to establish the acquiescence of the party to be charged to the contents of the unsigned document. *Beckwith v. Talbot*, 95 U.S. 289 (1877).  And the memorandum need not presently exist.  Even if the memorandum has been lost or destroyed, the Statute of Frauds writing requirement is satisfied so long as it once existed.

1   At a minimum, the memorandum must state with reasonable certainty: (a) the identity of both

2   contracting parties; (b) the subject matter of the contract so that it can be identified either from the

3   writing or if the writing is not clear by the aid of extrinsic evidence; (c) the essential terms and

4   conditions of all the promises constituting the contract and by whom and to whom the promises

5   are made. (REST.2d, §131)

6   In the instant case, the identity of both parties to the agreement is clearly established. [See

7   Exh. B - the 2006-2008 Contract; See Exh. L - DeNigris Ltr 11-17-2008] The subject matter of

8   the agreement was clearly identified as it pertained to the continuation of chief legal counsel

9   services to the defendant.  *Id.*  Thus, the essential terms and conditions of the agreement were

10  clearly established by the evidence of record and by whom the promises were made. [See Exh. B -

11  the 2006-2008 Contract; See Exh. D - Nov. 2008 PMSA Board Minute Meetings; See Exh. G -

12  DeNigris Ltr 1-28-2009; See Exh. L - DeNigris Ltr 11-17-2008]   Accordingly, a contract existed

13  for the 2009-2012 term.

14  The Nevada courts also find that a contract need not be signed, and the Statute of Frauds does

15  not bar enforcement if the parties accept and adopt the contract and assent to its terms, or if a party

16  changes position based on misleading acts or silence of the other.  *Cohen v. Gensbro Hotel Co*.,

17  259 F.2d 78, 83 n. 4 (9th Cir. 1958) (*citing Nehls v. William Stock Farming Co.*, 43 Nev. 253, 253,

18  184 P. 212, 214 (1919));  *Pravorne v. McLeod*, 79 Nev. 341, 346, 383 P.2d 855, 858 (1963) (*citing

19  U.S. Fidelity & Guaranty Co. v. Reno Electrical Works*, 43 Nev 191, 183 P. 386, 387 (1919).   As

20  a result, the Statute of Frauds *does not require* the existence of a formal written contract to validate

21  a transaction as long as some "note or memorandum" memorializing the transaction exists.  *Ray

22  Motor Lodge v. Shatz*, 80 Nev. 114, 119, 390 P.2d 42, 44 (1964) (stating that separate writings

23  considered together may satisfy Statute of Frauds even if neither is a sufficient memorandum in

24  itself).   And as noted above, a "note or memorandum" may satisfy the statute even though it

25  consists of separate writings.  *Id.* at 119, *citing* 2 Corbin, CONTRACTS, § 512.  Indeed the Nevada

26  Supreme Court has permitted separate writings to be considered together, *even though one of them*

27

28  Page 23 of  28

1  *was not signed by the party to be charged, and neither was a sufficient memorandum in itself.*

2  (emphasis added)   *Haspray v. Pasarelli*, 79 Nev. 203, 380 P.2d 919 (1963);   *see also Shell*

3  *Eastern Oil Petroleum Products v. White*, 62 App. D.C. 332, 68 F.2d 379 (D.C. 1933).

4          In the instant case, the November 19, 2008, memorandum initialed by the plaintiff and not

5  signed by Defendant Page was just one of several documents which demonstrated the existence

6  of a contract and which satisfied the Statute of Frauds. [See Exh. M - DeNigris Memo 11-19-2008]

7  The board meeting minutes of Defendant PMSA demonstrated the existence of a contract. [See

8  Exh. D - Nov. 2008 PMSA Board Minute Meetings]   The January 28, 2009, letter confirming the

9  remuneration confirmed the existence of a contract. [See Exh. G - DeNigris Ltr 1-28-2009]   The

10  payment of the quarterly checks to the plaintiff signed by Defendant Page confirmed the existence

11  of a contract. [See Exh. K - #000022 - 000028]   And plaintiff's performance in providing services

12  to the defendant confirmed the existence of a contract.   It is indisputable that the actual provisions

13  to be enforced were the provisions of the 2006-2008 contract, including Section 9, which contained

14  the mediation and arbitration provision. [See Exh. B - the 2006-2008 Contract]   The 2006-2008

15  document was clearly signed by Defendant Page and there is sufficient evidence in the record to

16  demonstrate that the defendant agreed to renew the 2006-2008 contract through 2012.   As noted

17  herein, the 2006-2008 contract; the November 17, 2008, letter to Defendant Page; the Defendant

18  PMSA Board minutes approving the plaintiff's proposal; the November 19, 2008, confirming

19  memorandum handed to Defendant Page; the rollover discussions; the January 28, 2009, letter; the

20  plaintiff's performance, and the payment of the plaintiff by the defendant, considered together

21  satisfy the Statute of Frauds, NRS 111.220, in that all essential terms of the contract are stated

22  therein. Accordingly, the defendant is not entitled to summary judgment and his motion should be

23  denied.

24          D.   *The Defendant Should be Estopped From Asserting the Statute of Frauds*

25          The foregoing arguments notwithstanding, compliance with the Statute of Frauds is excused

26  by both the doctrines of estoppel and partial performance.   Contracts otherwise unenforceable

27

28                                      Page 24 of  28

1  because of the Statute of Frauds may be enforced under the doctrine of estoppel.  *See Zunino v.*

2  *Paramore*, 435 P.2d 196, 197 (Nev. 1967).   This doctrine is properly invoked whenever

3  "unconscionable injury . . . would result from denying enforcement of the contract after one party

4  has been induced by the other seriously to change his position in reliance on the contract. . . ."

5  *Alpark Distributing, Inc. v. Poole*, 95 Nev. 605, 600 P.2d 229 (Nev. 9/25/1979), *citing Monarco*

6  *v. Lo Greco*, 220 P.2d 737, 739 (Cal. 1950).

7      In order for the doctrines of estoppel or partial  performance to apply, Nevada law requires

8  proof by "some extraordinary measure or quantum of evidence."  *Zunnio*, at 197.   The acts

9  allegedly constituting performance or reliance on the promise of the other party must clearly

10  establish the terms of the contract and "clearly appear to be done solely with a view to the

11  agreement being performed."  *Evans v. Lee*, 12 Nev. 393, 399 (Nev. 1877).  "Where one party to

12  the parol agreement has performed to such an extent that she will have no adequate remedy unless

13  the agreement is enforced, equity will grant such relief."  *Hardy v. United States*, 918 F. Supp. 312,

14  318 (D. Nev. 1996); *see also Schreiber v. Schreiber*, 663 P.2d 1189, 1190 (Nev. 1983) (quoting

15  *Evans*, 12 Nev. at 398).

16      The conduct of Defendant Page in this case warrants estoppel.  For almost 12-years, the

17  plaintiff served faithfully as the legal advisor to Defendant PMSA on matters of administrative

18  disciplinary action and labor overall strategy. [See Exh. J. - DeNigris Aff., ¶4] His services were

19  always of the highest quality, as evidenced by the continued renewal of his contracts with the

20  defendant.  Indeed, not only were his services to the defendants sought after, but when Defendant

21  Page had personal legal problems with his own business affairs and the affairs of his parents, he

22  relied upon the plaintiff's expertise and services to resolve those matters. *Id.* at ¶¶ 5-7.

23      During that 12-year period, the plaintiff declined numerous opportunities to develop other

24  police labor clients and organizations because of his commitment to the defendant. *Id.* at ¶¶ 14-15.

25   Indeed, the pronouncements of the Defendant Page clearly demonstrated that the plaintiff's

26  services were more than satisfactory during the course of the relationship.  Virtually each month

27

28                                   Page 25 of  28

during the relationship, the plaintiff traveled 4,000 miles round-trip to continue meeting his obligation and commitment to the defendant. *Id.* at ¶7   He spend countless hours traveling for the defendant's benefit. *Id.*

Additionally, upon arriving in Las Vegas, the plaintiff would travel to the defendant's union offices for meeting, investigative interviews, or to prepare for arbitrations. *Id.* at ¶8   He routinely met with the Sheriff and other Metro police officials, or with officials from Metro's labor relations office. *Id.* at ¶9   The plaintiff attended governmental meetings, attended breakfast, lunch and dinner meetings and award ceremonies. *Id.* at ¶10   He conducted training seminars and contributed to the publication of the defendant's "Police Lines" magazine. *Id.* at ¶11.   And it was not unusual for plaintiff to received numerous telephone calls throughout the day and into the late hours of the evening from Defendant Page, along with e-mails after hours. *Id.* at ¶12.   Throughout 2009, the record is completely devoid of any evidence that the plaintiff's professional services were substandard in any way – as evidenced by the defendant's board minutes, numerous emails and Defendant Page's signature on the quarterly payment checks. [*Id.* at ¶13; <u>See Exh. K</u> - #000022 - 000028].   Thus, Defendant Page should be estopped from asserting the Statute of Frauds as a defense to the enforcement of the 2009-2012 agreement.

### VII.   THE PLAINTIFF'S AMENDED REQUEST FOR ADMISSIONS DEMONSTRATE THERE AreGenuine ISSUES OF MATERIAL FACTS IN DISPUTE

On March 12, 2012, the Court granted the plaintiff's motion to withdraw and amend deemed admissions.   Those admissions, relied upon by Defendant Page in his Motion to Dismiss, demonstrate genuine issues of fact, specifically Requests for Admissions 5, 6, 7 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19, 22, 25, 26, 29, 32 and 33. [See Exh. E -, Plaintiff's Response to Defendant PMSA's Request for Admissions]

### VIII.   CONCLUSION

The evidence and argument provided herein demonstrate that the defendant's Motion to Dismiss is not well grounded in the facts or the law.   The plaintiff pleaded sufficient facts in his Amended Complaint to demonstrate that he has valid claims for relief.   To the extent the motion

is actually for summary judgment, the evidence reflects there are several material facts concerning the formation and continuation of the contractual relationship between the parties which are genuinely in dispute.  Based on this record, Defendant Page is not entitled to summary judgment. WHEREFORE, the plaintiff prays that the Court deny the defendant's motion.

Dated:  April 30, 2012.

Respectfully submitted,

/s/ *James M. Baker,*
James M. Baker, Esq.
Nevada Bar No. 9962
CASTRO & BAKER, LLP
6600 Amelia Earhart Ct. Suite C
Las Vegas, NV  89119
Office:  (702) 988-2631
Fax:    (702) 456-2542
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss was served via electronic service on the 30th day of April 2012, to the following individual:

John P. Aldrich, Esq.
ALDRICH LAW FIRM
1601 South Rainbow Blvd.
Suite 160
Las Vegas, NV  89146
*Attorney for Defendants*

/s/ *James M. Baker*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| STEPHEN G. DeNIGRIS, ESQ.,        ) | |
|          ) | |
|     *Plaintiff,*        ) | |
|          ) | Civil Action 11-cv-0119 (JCM/RJJ) |
|     v.        ) | |
|          ) | |
| LAS VEGAS POLICE MANAGERS AND   ) | |
| SUPERVISORS ASSOCIATION, INC.,    ) | |
| and PAUL PAGE,        ) | |
|          ) | |
|     *Defendants.*      ) | |
| _____ ) | |

**O R D E R**

     Presently before the Court is the Defendant Paul Page's Motion to Dismiss submitted pursuant to Fed R. Civ. P. 12(b)(6).  Upon consideration of the defendant's motion, the opposition from plaintiff, the papers filed,  and for such other good cause, it is

     **ORDERED** that the defendant's motion is

**GRANTED / DENIED.**


                                       _____
                                       U.S. Magistrate Judge


Dated: _____, 2012