UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| STEPHEN G. DeNIGRIS, ESQ.,<br><br>    Plaintiff,<br><br>v.<br><br>LAS VEGAS POLICE MANAGERS<br>AND SUPERVISORS ASSOCIATION,<br>INC.,<br><br>    Defendant. | 2:11-CV-119 JCM (NJK) |

**ORDER**

Presently before the court is defendant Las Vegas Police Managers and Supervisors Association, Inc.'s ("PMSA") motion for summary judgment. (Doc. # 70). Plaintiff Stephen DeNigris filed an opposition. (Doc. # 71). Defendant PMSA replied. (Doc. # 74).

Also before the court is defendant Paul Page's ("Page") motion for summary judgment. (Doc. # 69). Plaintiff filed an amended opposition. (Doc. # 73). Defendant Page replied. (Doc. # 75).

**I.    Background**

Plaintiff is an attorney who previously represented PMSA in various matters starting around 1998. (Doc. # 70). In 2001, plaintiff and PMSA entered into a contract, which included termination, conflict of interest, entire agreement, waiver, and arms-length transaction provisions (the "2001 contract"). (*Id.*). Plaintiff drafted another contract which was in effect from 2006-2008, and

**James C. Mahan**
**U.S. District Judge**

1  contained similar format and language to the 2001 contract (the "2006 contract"). (*Id.*).

2  The 2006 contract contained language which stated the contract was "continuing until
3  December 31, 2008, and thereafter year to year unless cancelled by either party hereto as set forth
4  herein." (*Id.*). However, the 2006 contract did not contain the termination, conflict of interest, entire
5  agreement, waiver, or arms-length transaction provisions that the 2001 contract contained. (*Id.*).

6  Plaintiff admitted in his deposition that he removed these clauses from the 2006 contract, but
7  claimed that the former chairman of PMSA agreed to the exclusion of these provisions. (*Id.*, Ex. C,
8  42). However, the former chairman denied any knowledge of the removal of these clauses from the
9  2006 contract. (*Id.*, Ex. D, 43-44).

10  Plaintiff notified PMSA in or about November 2008, that the 2006 contract was about to
11  expire, seeking to negotiate a new contract. (*Id.*). On November 19, 2008, the PMSA's board of
12  directors approved a new contract with plaintiff, subject to a specific condition that PMSA be able
13  to cancel the contract upon 60-days notice to plaintiff. (*Id.*). However, plaintiff never drafted an
14  agreement, and a new contract between the parties was never executed. (*Id.*).

15  In early 2010, PMSA requested a copy of the planned 2009-2012 contract from plaintiff.
16  (*Id.*). Plaintiff identified three documents regarding the existence of a written contract for the years
17  2009-2012: (1) a November 19, 2008, memorandum from plaintiff to PMSA's former chairman,
18  which is signed by plaintiff only;[1] (2) a letter from plaintiff to the former chairman, dated November
19  17, 2008, in which plaintiff claims to confirm the rate increase for the 2009-2012 period;[2] and (3)
20  payments from PMSA to plaintiff for services in 2009 and early 2010.[3] (*Id.*).

21  On March 4, 2010, PMSA fired plaintiff, and plaintiff alleges his termination was improper
22  in violation of the 60-day termination clause. (Docs. # 1). On August 15, 2011, plaintiff filed a first

---

[1] Doc. # 70, Ex. H. Plaintiff admits this November 19, 2008, letter was signed by plaintiff only, and was never signed by the chairman or anyone else on behalf of PMSA.

[2] Doc # 70, Ex. E. Plaintiff claims the November 17, 2008, letter was an acceptance of an oral offer–or at least a document not produced in discovery–proposed by the chairman without approval of the board of directors. There is no signature on this document from anyone on behalf of PMSA.

[3] Doc # 70, Ex. C, pp. 19, 64.

1  amended complaint. (Doc. # 15). Plaintiff's amended complaint seeks to compel arbitration with
2  PMSA based on the alleged 2009-2012 contract between the parties at the time of plaintiff's
3  termination. (Doc. # 70). PMSA now moves for summary judgment on plaintiff's cause of action
4  to compel arbitration.[4] (*Id.*).

## II.     Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th

---

[4] PMSA had previously filed a motion for partial summary judgment in which this court denied on the grounds that PMSA had not properly authenticated the evidence. (Doc. # 60). Defendant now authenticates the evidence supporting its motion for summary judgment. (Doc. # 70, 2:13-5:15).

**James C. Mahan**
**U.S. District Judge**

- 3 -

Cir. 1987).

Since an agreement to arbitrate is a matter of contract, summary judgment is appropriate when the contract terms are clear and unambiguous, even if the parties disagree as to their meaning. *See United States v. King Features Entertainment, Inc.*, 843 F.2d 394, 398 (9th Cir. 1988); *see also Int'l Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1406 (9th Cir. 1985). Interpretation of the contract, including whether it is ambiguous, is a matter of law. *Beck Park Apts. v. United States Dep't of Housing*, 695 F.2d 366, 369 (9th Cir. 1982). In Nevada, a contract provision "is ambiguous if it is reasonably susceptible to more than one interpretation." *See Magrave v. Doormat Properties, Inc.*, 110 Nev. 824, 827 (1994).

### III. Discussion

A court's discretion for compelling arbitration is limited to a two-step process of "determining (1) whether a valid agreement to arbitrate exists, and if it does; (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). A party cannot be ordered to arbitration unless there is "an express, unequivocal agreement to that effect." *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 923 (9th Cir. 2011) (quotation omitted).

#### 1. Valid Agreement

The court must first determine whether there was an enforceable contract between 2009 and 2012. The primary dispute surrounds whether the parties agreed to a 60-day termination clause.

##### A. Contract Formation

For an enforceable contract, basic contract principles require offer, acceptance, meeting of the minds, and consideration. *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). Preliminary negotiations do not constitute a binding contract unless the parties have agreed to all material terms. *Id.*

Defendant asserts that there is not a valid contract between the parties for the 2009-2012 period. (Doc. # 70). Plaintiff argues that the proposal to renew the existing 2006-2008 contract constituted a valid offer, and both parties demonstrated their intent to continue their contractual

James C. Mahan
U.S. District Judge

- 4 -

1  relationship. (Doc. # 71). While the board of directors did approve entering into a new contract with
2  plaintiff for the 2009-2012 period, the 60-day termination clause was merely a proposal at the board
3  meeting.

4  None of the three documents which plaintiff identifies as evidence of the 2009-2012 contract
5  have signatures from both parties. The November 17, 2008, letter only proposed the 2009-2012
6  contract and set forth plaintiff's terms. (Doc. # 70, Ex. E) ("I would like to propose that my contract
7  be for . . . I look forward to seeing you and the Board at this month's meeting").

8  Additionally, the November 19, 2008, memorandum simply confirmed the approval by the
9  board for the renewal of the contract. (Doc. # 70, Ex. H) ("This confirms the November 19, 2008
10 approval by the board of the renewal of my contract for 1/1/2009 through 12/31/20102"). Neither
11 of these letters discuss a 60-day termination clause. There was no meeting of the minds regarding
12 this provision during the time period plaintiff seeks to enforce it.

13 At this time, the parties were merely in preliminary negotiations which cannot constitute a
14 binding contract. *May*, 119 P.3d at 1257. There is no evidence that the parties agreed to the 60-day
15 termination clause, which is a material term necessary to the dispute between the parties. Plaintiff
16 was instructed to draft the 2009-2012 contract after the board members' approval, but the documents
17 plaintiff claims establish the contract only propose and confirm the approval of a *future contract*.

18 Viewing the evidence in light most favorable to plaintiff, these documents plaintiff relies on
19 may be construed as offers. However there is an absence of consideration and acceptance, thus there
20 is no valid contract. Additionally, there is not a single document signed by both parties regarding
21 the existence of the contract in general. The court finds there is no enforceable contract for the 2009-
22 2012 period. Because there is no evidence of an enforceable contract or even a 60-day termination
23 clause, the court cannot compel arbitration. *See, e.g.*, *Erection Co., Inc. v. W & W Steel, LLC*, 513
24 F. App'x 664 (9th Cir. 2013) (unpublished).

25 **B.     Statute of Frauds**

26 Even if a valid contract did exist, the statute of frauds bars enforcement of the provisions
27 plaintiff seeks to enforce. Defendant argues that the documents which plaintiff alleges constitute the
28

**James C. Mahan
U.S. District Judge**

- 5 -

agreement between the parties violate the statute of frauds. The court agrees.

In Nevada, every agreement which cannot be performed within one year of the agreement, must be in writing, and signed by the person to be charged with the obligation. NEV. REV. STAT. § 11.220.

Here, the contract cannot be performed within one year because the alleged agreement is for the years 2009-2012. This alone is sufficient to violate the statute of frauds. Additionally however, since PMSA is the party to be charged, a signature on PMSA's behalf is required on the documents which plaintiff contends creates the contract. And even if the court were to construe the November 17 and November 19 memoranda as a valid contract, both of these documents are signed only by plaintiff. Therefore, the statute of frauds renders the purported 2009-2012 contract void.[5]

### 2. Arbitration Clause

The question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator. *AT&T Techs., Inc v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). In order to compel arbitration, plaintiff has the burden of proving there is an enforceable written contract between the parties which contains an arbitration clause. If there is not a valid contract, there can be no agreement to arbitrate. Plaintiff has failed to show that there is an enforceable 2009-2012 contract, and therefore plaintiff's claim to compel arbitration fails as a matter of law.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant Las Vegas Police Managers and Supervisors Association, Inc.'s motion for summary judgment (doc. # 70) be, and the same hereby is, GRANTED.

IT IS THEREFORE ORDERED that the clerk of the court enter judgment in favor of defendant Las Vegas Police Managers and Supervisors Association, Inc.

---

[5] To the extent that plaintiff argues that PMSA should be estopped from asserting the statute of frauds as a defense because it paid him for legal work into the 2009-2012 term, the court finds this argument unpersuasive. Plaintiff's choice to forego other clients throughout the duration of the parties' relationship does not amount to an "unconscionable injury," *see Alpark Distrib., Inc. v. Poole*, 600 P.2d 229, 230-31 (Nev. 1979), to estop PMSA from asserting the statute of frauds as a defense.
**James C. Mahan**
**U.S. District Judge**

IT IS FURTHER HEREBY ORDERED, ADJUDGED, AND DECREED that defendant Paul Page's motion for summary judgment (doc. # 69) be, and the same hereby is, DENIED without prejudice.[6]

DATED July 26, 2013.

_____
**UNITED STATES DISTRICT JUDGE**

---

[6] On June 21, 2013, a settlement conference was held before Magistrate Judge Hoffman. (Doc. # 780. A settlement was reached between plaintiff and defendant Page only. Regarding defendant Page's motion for summary judgement (doc. # 69), the court denies this motion without prejudice.